UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PIPEFITTERS LOCAL 636 DEFINED
PENSION BENEFIT FUND, et al.,

      Plaintiffs,

                              Case No. 06-CV-12019
vs.                           HON. GEORGE CARAM STEEH

L & R SERVICES, INC., et al.,

      Defendants.

_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (#12), DENYING PLAINTIFFS' MOTION TO FILE FIRST AMENDED COMPLAINT (#11), AND DISMISSING DEFENDANT LINDA ALLEN

Plaintiffs, which include six Benefit Funds and a Retirement Plan affiliated with Pipefitters, Refrigeration & Air Conditioning Service Local 636, seek summary judgment on their claims that defendants L & R Services, Richard Buchanan, Linda Allen, and Scott Currie are liable under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(g)(2), 1109(a) and 1145, and the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, for unpaid fringe benefit contributions owing under collective bargaining agreements. Plaintiffs also move for leave to file a First Amended Complaint to allege claims of personal liability against Buchanan and Currie under a theory of piercing the corporate veil. A hearing was held on June 11, 2007. For the reasons set forth below, plaintiffs' motion for summary judgment will be DENIED. Plaintiffs' motion for leave to file a First Amended Complaint will be DENIED. Defendant Linda Allen will be DISMISSED

from this lawsuit as a party-defendant.

# I. Background

Plaintiffs filed a complaint on May 2, 2006 alleging they are third-party beneficiaries to a collective bargaining agreement between Local 636 and the Association of Service and Mechanical Contractors of Southeastern Michigan (Association) as adopted by defendant employer L&R. Evidence in the record includes a September 30, 2003 written authorization signed by L&R's Currie adopting a June 1, 2001 through May 31, 2004 CBA (2001 CBA) on behalf of L&R. The 2001 CBA reads in part:

**Article XVII**
**Duration**
112. This Agreement is for the period June 1, 2001, through May 31, 2004, and it is mutually agreed that unless the Association [on behalf of L&R] or the Union [Local 636] shall serve on the other, no more than 90 (ninety) days nor less than sixty (60) days prior to its expiration date, written notice of termination or changes desired in its terms, this Agreement shall continue in effect from year to year, with the right reserved for the Association [on behalf of L&R] or Union [Local 636] to serve on the other not more than ninety (90) days nor less than sixty (60) days prior to its yearly expiration date, written notice of termination or any change desired. Notice of a request for a change in the Agreement shall state what change is desired.

A second June 1, 2004 through May 31, 2006 CBA (2004 CBA) reads:

**Article XVII**
**Duration**
112. This Agreement is for the period June 1, 2004, through May 31, 2006, and it is mutually agreed that unless the Association [on behalf of L&R] or the Union [Local 636] shall serve on the other, no more than 90 (ninety) days nor less than sixty (60) days prior to its expiration date, written notice of termination or changes desired in its terms, this Agreement shall continue in effect from year to year, with the right reserved for the Association [on behalf of L&R] or Union [Local 636] to serve on the other not more than ninety (90) days nor less than sixty (60) days prior to its yearly expiration date, written notice of termination or any change desired. Notice of a request for a change in the Agreement shall state what change is desired.

No written authorization for the 2004 CBA was signed by L&R. Both CBAs provide: "The

terms and conditions of this Agreement shall not apply to any other Employees except those doing work coming under the Jurisdiction of the Union." 2001 CBA, Article II, ¶ 7, at 2; 2004 CBA, Article II, ¶ 7, at 2. The Union Jurisdiction includes installing and/or servicing heating, ventilation, and air conditioning materials and units. See 2001 CBA, Article V, ¶¶ 19-31, at 6-8, Appendix B, at 48-53; 2004 CBA, Article V, ¶¶ 19-31, at 6-8, at 49-54.

The record also includes a "Payment Agreement" (2005 Payment Agreement) executed on February 23, 2005 by L&R, Buchanan and Allen as guarantors, the plaintiffs Funds' Board Chairman, and Local 636 Business Representative Greg Sievert. In addition to recognizing $20,170.20 in delinquent fringe benefit contributions and liquidated damages for the period of September and October 2004, the 2005 Agreement also provides that "[L&R] agrees to abide by all terms of the Collective Bargaining Agreement. Said Agreement includes timely payment of all on going [sic] fringe benefit obligations. . . ." 2005 Payment Agreement, ¶ 7, at 2.

Three significant letters are proffered by the parties. The first is a letter dated March 28, 2005 from L&R's Buchanan to the President of Local 636 c/o Pipe Fitters Union, which reads:

> L&R Services Inc. is giving written notice that they are [sic] no longer wish to be associated with Local 636 the Pipe Fitters Union as of April 1, 2005. We no longer be [sic] considered a union shop and will not be bidding on any union associated work. Please see the attached signed contract showing our agreement date as the end of May 2004.

The second is a letter dated August 25, 2005 from plaintiffs' Counsel David Selwocki to L&R's Buchanan, stating in part:

> [W]e are reviewing the issue regarding your contract abrogation. It appears you adopted the ACM contract. Please review the preamble on page 1 of the agreement and Article 7 on page 28 of the agreement (copies

3

are attached hereto).

> Pursuant to same, the contractor is considered bound by the contract until they file a formal written abrogation letter as those provisions set forth. We do not believe L&R Services, Inc. ever took that step. Further, the other difficulty we face is the fact that you paid fringe benefits pursuant to the contract on behalf of the employees covered by the agreement for time periods post May 31, 2004. . . . .

A third November 7, 2005 letter from L&R's Buchanan to James Lapham c/o Local 636, reads in part:

> L&R Services Inc. had given written notice that they no longer wish ro be associated with Local 636 the Pipe Fitters Union as of April 1, 2005, and would no longer be considered a union shop and will not be bidding on any union associated work. Please see the attached Letter dated March 28, 2005 and sent to the president of the local. I had also enclosed a signed contract showing our agreement date as the end of May 2004. In a comment made by Business Rep. Greg Sievert, that L&R Services Inc. was still bound by a contract and were also under investigation, for what he would not say, but I believe it was all brought about when John Holcomb quit the company and tried to apply for unemployment. I am sending this letter certified this time so that I know that someone received it and can once and for all resolve this matter and dissolve our relationship. . . . .

Local 636 Official Joe Bourgeois attests that Local 636 first received Buchanan's March 28, 2005 letter in November 2005 as an attachment to Buchanan's November 7, 2005 letter. Buchanan attests that he mailed the March 28, 2005 termination letter in late March 2005.

The record also includes two "Employee Monthly Report of Hours and Contributions" forms (2005 Contribution Forms) signed by Buchanan and submitted by L&R for January 1995 for L&R employees John Holcomb and Fred Lynn. These 2005 Contribution Forms each read in part:

> I certify that the information contained in this report is a full and accurate statement of all employees working for us under the jurisdiction of Pipefitters Local 636 for the period indicated. By filing this report, the below named

> Employer agrees to be bound by all terms of the current Collective Bargaining Agreement between Pipefitters Local 636 and Employer Associations in the Detroit area, and to all the terms of the Trust Agreements of these Funds, specifically including provisions relating to Fringe Benefit Fund Contributions.

The 2005 Contribution Form submitted for "Mechanical Equipment Service Man" Holcomb reflects a fringe payment rate of $14.06 per hour, while the 2005 Contribution Form submitted for "Journeyman" Lynn reflects a fringe payment rate of $20.76 per hour.

A January 25, 2007 audit performed by the plaintiffs for a period through December 2006 calculates total damages at $413,901.44. The audit was based on payroll records, and plaintiffs concede the audit contains possible errors.

## II. Motion for Summary Judgment

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to [the fact-finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences arising therefrom must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532

5

(6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).

### B. Dismissal of Defendant Allen and Plaintiffs' Withdrawal of Summary Judgment on Damages Issue

Plaintiffs acknowledged at the June 11, 2007 hearing that they are not seeking guarantor liability against any of the individual defendants, and that they have no evidence to support a claim of liability against defendant Linda Allen. Allen is entitled to dismissal from this lawsuit as a party-defendant as a matter of law. Amway Distributors, 323 F.3d at 390.

Plaintiffs conceded in their briefs that their January 25, 2007 audit based on payroll records contains possible errors. In response to the payroll-based audit, defendants produced L&R's actual work orders. The parties agree that an audit based on these work orders would provide greater accuracy as to defendants' potential liability. On the record, plaintiffs withdrew that part of their motion for summary judgment seeking $376,152.56 in damages, premised on the January 25, 2007 audit, in favor of a second audit based on L&R's work orders. That part of plaintiffs' motion for summary judgment seeking specific damages will thus be denied without prejudice as withdrawn. Amway Distributors, 323 F.3d at 390.

### C. Liability Under the CBAs

Plaintiffs argue that, after May 31, 2004, L&R continued to be bound by the 2001

CBA under the "evergreen clause" which renewed the 2001 CBA "from year to year" until L&R terminated the contract effective May 31, 2007. Alternatively, plaintiffs argue that L&R continued the 2001 CBA or adopted the 2004 CBA after May 31, 2004 by its conduct manifesting an intent to continue the contractual relationship, as evidenced by L&R's execution of the 2005 Payment Agreement and its submission of 2005 Contribution Forms. Plaintiffs assert Buchanan's March 28, 2005 letter did not terminate either the 2001 CBA or 2004 CBA because the letter was first "served" when it was received by Local 636 in November 2005, more than 90 days before the May 31 termination dates.

Defendants counter that Local 636 Representative Sievert misrepresented the contents of the 2001 CBA before L&R expressly adopted it on September 30, 2003, by agreeing with Currie that L&R would be obligated to pay fringe benefit contributions only for "union employees" who performed "union jobs." See April 27, 2007 Currie Affidavit, ¶ 8, at 3. Defendants continue that Buchanan's March 28, 2005 letter was mailed to L&R in March 2005, constituting timely "service" of written notice of termination as that term is commonly understood, and that L&R lost the delivered letter. Defendants argue that Local 636 also received sufficient actual oral notice of termination in March or April 2005 when Buchanan told L&R union employee Holcomb that L&R had terminated the contract, and Holcomb in turn told Local 636's Sievert of the termination. Defendants rely on Fred Lavery Co. v. Nissan North America, Inc., 99 Fed. Appx. 585, 590 (6th Cir. May 4, 2004) as excusing written notice where actual oral notice is received. Defendants argue they could not have adopted the 2004 CBA because they never received the document.

"[A] collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound ... [a]ll that is required is conduct manifesting an intention

7

to abide and be bound by the terms of an agreement." Central States Pension Fund v. Behnke, Inc., 883 F.2d 454, 459 (6th Cir. 1989) (quoting Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 373 (7th Cir. 1985)). Conduct sufficient to manifest an employer's intent to be bound by the terms of a collective bargaining agreement include executing a separate written agreement obligating the employer to make fringe benefit contributions, Behnke, 883 F.2d at 460, executing fringe benefit contribution forms that acknowledge "the current Collective Bargaining Agreement," Trustees of Flint Michigan Laborers' Pension Fund v. In-Puls Construction Co., 835 F.Supp. 972, 973, 975 (E.D. Mich. 1993), and withholding fringe benefit payroll amounts in accordance with the terms of an expired collective bargaining agreement, remitting contributions in amounts owing under a new collective bargaining agreement before signing the agreement, and filing forms stating contributions are made in accordance with "the current applicable collective bargaining agreement." Michigan Bricklayers and Allied Craftsmen Health Care Fund v. Northwestern Construction, Inc., Nos. 95-2379, 96-1346, 1997 WL 351296, *2 (6th Cir. June 23, 1997) (unpublished). Unless expressed in unambiguous contract language, the existence of a later collective bargaining agreement, in which the relevant party was not involved, does not constitute a termination of an earlier collective bargaining agreement entered into by that same entity. Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc., 163 F.3d 965, 969 (6th Cir. 1998).

    Construing the pleadings and evidence in a light most favorable to the defendants, it is beyond reasonable dispute that L&R either continued the 2001 CBA after May 31, 2004 pursuant to the "evergreen clause" and L&R's subsequent conduct, or L&R adopted the 2004 CBA by this same subsequent conduct manifesting an intent to be bound by the 2004

CBA. The 2005 Payment Agreement executed by L&R on February 23, 2005 manifested L&R's intent to "abide by all terms of the Collective Bargaining Agreement . . . includ[ing] timely payment of all on going [sic] fringe benefit obligations." The 2005 Contribution Forms executed by L&R in January 2005 manifested L&R's "agree[ment] to be bound by all terms of the current Collective Bargaining Agreement between Pipefitters Local 636 and Employer Associations in the Detroit area . . . ." Behnke, 883 F.2d at 459-460; In-Puls Construction, 835 F.Supp. at 973, 975; Northwestern Construction, 1997 WL 351296, at *2. The 2001 CBA does not appear to contain unambiguous language providing that the existent of a new collective bargaining agreement, here the 2004 CBA, would constitute a termination of the earlier 2001 CBA. Fantin Enterprises, 163 F.3d at 969. Such would suggest that L&R continued and adopted the 2001 CBA after May 31, 2004, consistent with L&R's argument that it never received a copy of the 2004 CBA. On the other hand, the fringe benefit payment rates of $14.06 per hour for a "Mechanical Equipment Service Man" and $20.76 per hour for a "Journeyman," as reflected in L&R's submission of the 2005 Contribution Forms, match the fringe benefit payment rates set forth in the 2004 CBA. See 2004 CBA, at v, x. Of course, the payment rates under the 2001 CBA and 2004 CBA for the years 2005 through 2007 may indeed be equal. For purposes of this motion in which the element of damages is no longer at issue, it is sufficient to find that there is no genuine dispute that L&R was bound by either the 2001 CBA or 2004 CBA after May 31, 2004. Amway Distributors, 323 F.3d at 390.

Defendants' argument of misrepresentation premised on oral statements made by Local 636 Representative Sievert before L&R adopted the 2001 CBA on September 30, 2003 is without merit because it does not support a requisite finding of fraud in the

execution, in which a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms, as opposed to fraud in the inducement. Iron Workers' Local No. 25 Pension Fund v. Allied Fence and Security Systems, 922 F.Supp. 1250, 1257 (E.D. Mich. 1996) (citing Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769 (9th Cir. 1986)). Fraud in the execution requires proof of "excusable ignorance" of the contents of the CBA. Allied Fence, 922 F.Supp. at 1257 (quoting Rozay's Transfer, 791 F.2d at 774-775). Sievert's alleged false assurances of a permissible "split shop" or "double-breasted" operation cannot support a finding of fraud in the execution because there is no confusion as to the actual contents of the 2001 CBA, which provides that "[t]he terms and conditions of this Agreement shall not apply to any other Employees except those doing work coming under the Jurisdiction of the Union." See 2001 CBA, Article II, ¶ 7, at 2; 2004 CBA, Article II, ¶ 7, at 2. Allied Fence, 922 F.Supp. at 1257. Nor have defendants shown "excusable ignorance" for executing the September 30, 2003 Authorization before reading the 2001 CBA. Id. Still further, defendants' assertion of fraud is simply not actionable against the plaintiffs Funds as a matter of law. See Behnke, 883 F.2d at 460 (quoting Robbins v. Lynch, 836 F.2d 330, 333-34 (7th Cir. 1988) as recognizing under ERISA law that "[a] claim that the union has promised not to collect a payment called for by the agreement is not a good answer to the trustees' suit - although it might be a ground on which to obtain damages from the local union").

Having determined that either the 2001 CBA or the 2004 CBA continued in effect after May 31, 2004, the dispositive liability issue becomes whether L&R "served" Local 636 with requisite "written notice of termination" in late March or early April of 2005 by way of Buchanan's March 28, 2005 letter, and thereby limited L&R's liability through May 31, 2005.

See 2001 CBA, Article XVII, ¶ 112, at 28; 2004 CBA, Article XVII, ¶ 112, at 28. Any oral notice of termination received by Sievert fails to satisfy the "written notice of termination" requirement of the 2001 CBA and 2004 CBA. See Fantin Enterprises, 163 F.3d at 969 (finding that collective bargaining agreement language requiring "written notice of intent to terminate" expresses a clear and unambiguous requirement); NLRB v. Vapor Recovery Systems Co., 311 F.2d 782, 785 (9th Cir. 1962) (reasoning that if written notice is required by contract and the manner of giving notice is not specified, "it is sufficient to show that the party to be notified received actual written notice, the means employed being unimportant"). Lavery, an unpublished Sixth Circuit decision interpreting Michigan law as dispensing with the "written notice" requirements of the Michigan Motor Vehicle Dealer Franchise Act if the party to be notified has "actual notice" of the relevant facts, is not persuasive in the context of interpreting an unambiguous collective bargaining agreement under federal labor law. See Fantin Enterprises, 163 F.3d at 969.

  The court agrees with the reasoning in Vapor Recovery Systems to the extent that, where a collective bargaining agreement such as the 2001 CBA and 2004 CBA unambiguously requires service of written notice of termination, and the contract does not specify the manner of written notice, the party seeking to establish service of written notice of termination, here being L&R, must prove that the party to be notified, Local 636, actually *received* written notice. Vapor Recovery Systems Co., 311 F.2d at 785. Absent authority to support their position, defendants' argument that service of written notice of termination is effective upon mailing, analogous to service under Federal Rule of Civil Procedure 5(b)(2)(B), is not persuasive. Service of papers under the Federal Rules also requires that the same papers and a certificate of service be filed with the court within a reasonable time

after service. Fed. R. Civ. P. 5(d). Improper service under the Federal Rules is also subject to sanctions, as where a party files a false certificate of service. See Fed. R. Civ. P. 11. Buchanan's pre-litigation letter was not subject to the requirements of the Federal Rules. Consistent with the reasoning in Vapor Recovery Systems, L&R must show that Local 636 timely and actually received Buchanan's March 28, 2005 letter to prove that the contractual relationship was terminated effective May 31, 2005.

Construing the pleadings and evidence in a light most favorable to the defendants, it remains possible for L&R to prove that Local 636 actually received Buchanan's March 28, 2005 letter in time to terminate the contractual relationship. "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in a light most favorable to the non-moving party." Keweenaw Bay Indian Community v. Rising, 477 F.3d 881, 886 (6th Cir. 2007). Buchanan attests that, once Currie approved the March 28, 2005 letter "in late March 2005, . . . the next day, I mailed it." April 30, 2007 Buchanan Affidavit, ¶ 12, at 4. This evidence tends to show that it is more likely than not that the letter was actually received by Local 636 in the regular course of mail. Buchanan's November 7, 2005 certified letter to Local 636 supports a finding that Buchanan had previously mailed the March 28, 2005 letter in the regular mail. Viewing Local 636 Official Bourgeois' denial that Local 636 received the March 28, 2005 before November 2005 in a light most favorable to the defendants, and without making an improper credibility determination, a trier-of-fact could reasonably conclude at that the March 28, 2005 letter was in fact received by Local 636 in time to effect a May 31, 2005 termination of the parties' contract. Keweenaw Bay, 477 F.3d at 886. Whether L&R "served" Local 636 with requisite "written notice of termination" by way of Buchanan's

12

March 28, 2005 letter remains a question of fact to be resolved at trial. Amway Distributors, 323 F.3d at 390. Assuming that Buchanan's attestation of mailing is accepted, a fact-finder could reasonably conclude that Bourgeois lied in denying receipt or that the letter was received and lost or misdirected within Local 636.

In summary, it is beyond dispute that L&R is liable to pay fringe benefit contributions owing under either the 2001 CBA or 2004 CBA after May 31, 2004. A question of fact remains whether the applicable collective bargaining agreement was terminated effective May 31, 2005.

### D. Personal Fiduciary Liability of Buchanan and Currie

Plaintiffs argue that Buchanan and Currie are personally liable for L&R's unpaid fringe benefit contributions as ERISA fiduciaries. Plaintiffs assert that eleven district judges within the Eastern District of Michigan have found individual fiduciary liability under similar circumstances, citing cases such as Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc., 352 F.Supp.2d 794 (E.D. Mich. 2004) (Zatkoff, J.) and Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equipment, L.L.C., 353 F.Supp.2d 851 (E.D. Mich. 2004) (Edmunds, J.). Defendants respond that plaintiffs cannot make a requisite showing of fraud, citing NLRB v. Fullerton Transfer & Storage, Ltd., 910 F.2d 331, 338 (6th Cir. 1990) and Scarbrough v. Perez, 870 F.2d 1079, 1081 (6th Cir. 1981).

29 U.S.C. § 1104(a)(1)(A)(i) requires an ERISA fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: . . . providing benefits to participants and their beneficiaries . . . ." 29 U.S.C. § 1109(a) states that an ERISA fiduciary who breaches a fiduciary duty "shall be personally liable to make good to such plan any losses to the plan resulting from each

breach[.]"  A person is an ERISA fiduciary if he "exercises any discretionary authority or discretionary control respecting management of [an ERISA plan] or exercises any authority or control respecting management or disposition of its assets[.]" ERISA 29 U.S.C. § 1002(21)(A).  "Plan assets" include participant contributions.  29 C.F.R. § 2510.3-102(a).

Under ERISA's statutory scheme, defendants Buchanan and/or Currie may be held personally liable for L&R's delinquent fringe benefit payments on proof that Buchanan and/or Currie were ERISA fiduciaries who exercised any authority or control respecting the management or disposition of fringe benefit contribution assets, and failed to exercise that authority or control for the exclusive purpose of providing fringe benefits to the plaintiffs Funds' participants and beneficiaries.  See generally McGuire Steel, 352 F.Supp.2d at 806 (recognizing that ERISA fiduciary violates duty if he uses plan assets to satisfy other business obligations); Nicolas Equipment, 353 F.Supp.2d at 854-855 (finding company principal was individually liable as ERISA fiduciary by using fringe benefit fund deposits for other purposes); Roofers Local 149 Security Benefit Trust Fund v. Milbrand Roofing Group, Inc., No. 05-60218, 2007 WL 835802 (E.D. Mich. March 14, 2007) (O'Meara, J.) (finding corporate principal individually liable as ERISA fiduciary for directing bookkeeper not to pay contributions).  Scarbrough and Fullerton, relied upon by the defendants, are inapplicable as they deal with the issue of "piercing the corporate veil" and holding a corporate owner liable as an ERISA "employer" as opposed to an ERISA fiduciary.  See Fullerton, 910 F.2d at 340 (citing fraud as a factor in determining whether to ignore the separate status of a corporate entity under federal common law); Scarborough, 870 F.2d at 1083 (recognizing that the owner of a corporation cannot be held personally liable under a theory of piercing the corporate veil without justification).

"To state that someone is [an ERISA] fiduciary is a legal conclusion to be determined by a trier of fact." Akers v. Palmer, 71 F.3d 226, 230 (6th Cir. 1995). It is undisputed that Buchanan is L&R's President and a 51% owner, while Currie is the Vice President and a 49% owner. Plaintiffs' argument that Buchanan and Currie as owners are liable as fiduciaries for withdrawing monies from L&R for their personal use does not address whether Buchanan and/or Currie were also exercising authority or control over Fund assets during the same time period. Viewing the record evidence in a light most favorable to Buchanan and Currie, their status as owners and officers of L&R does not demonstrate beyond all reasonable dispute that they were, at all times, acting as ERISA fiduciaries. Plaintiffs are not entitled to summary judgment on the factual issue of whether Buchanan and/or Currie were ERISA fiduciaries. Akers, 71 F.3d at 230; Amway Distributors, 323 F.3d at 390.

## II. Motion for Leave to File Amended Claim
## Of Piercing the Corporate Veil

Plaintiffs move for leave to file a First Amended Complaint to add a claim seeking to pierce L&R's corporate status and find Buchanan and Currie personally liable under an "alter ego" theory. Leave to amend a complaint is to be freely granted when justice so requires. See Fed. R. Civ. P. 15(a). Absent bad faith or dilatory motive on the part of the movant, leave to amend should be granted unless the amended claim would not survive a motion to dismiss. Foman v. Davis, 371 U.S. 178, 182 (1962); Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1041-42 (6th Cir. 1991); Head v. Jellico Hous. Auht., 870 F.2d 1117, 1124 (6th Cir. 1989). In deciding a motion to dismiss, the court accepts the allegations as true, and may dismiss a claim only if the plaintiff can prove no set of facts

which would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The Sixth Circuit has held under federal common law that "most cases" involving piercing the corporate veil may be decided on addressing three factors: (1) the amount of respect given to the separate identity of the corporation by its owners; (2) the degree of injustice visited upon the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators. Fullerton, 910 F.2d at 340. No one factor is controlling. Id. Liability "cannot be premised on the owner-operator status of the business itself." Id. at 342.

Plaintiffs Funds concede that Buchanan and Currie did not act with fraudulent intent. Plaintiffs ask for leave to amend to add a piercing the corporate veil claim only if the court denies summary judgment on the ERISA fiduciary claim. The fiduciary duty claim remains viable notwithstanding the denial of summary judgment. The court is not persuaded that an injustice would be visited on the parties if Buchanan and Currie are found not to be ERISA fiduciaries, and are otherwise shielded from personal liability by recognition of L&R's corporate status, even though, as plaintiffs argue, sole shareholders Buchanan and Currie did not hold formal meetings among themselves with agendas and minutes, failed to produce corporate By-Laws or annual meeting minutes, failed to produce documentation of their corporate salaries, and loaned money to L&R without accompanying loan documents. Considering the factors to be addressed in deciding piercing the corporate veil claims, and the conditional nature of the plaintiffs' motion, plaintiffs' motion for leave to file a First Amended Complaint to add a piercing the corporate veil claim will be denied because it would not survive a motion to dismiss. Foman, 371 U.S. at 182; Sinay, 948 F.2d at 1041-42; Head, 870 F.2d at 1124; Fullerton, 910 F.2d at 340, 342.

### III. Conclusion

Plaintiffs' motion for summary judgment is hereby DENIED. Plaintiffs' motion for leave to file a First Amended Complaint adding a claim of piercing the corporate veil is hereby DENIED. Defendant Linda Allen is hereby DISMISSED from this lawsuit as a party-defendant. The remaining parties will proceed to a bench trial consistent with the analysis and findings herein.

SO ORDERED.

Dated: June 20, 2007

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 20, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk